### FROMEN v. GOOSE CREEK INDEPENDENT SCHOOL DIST.

#### No. 11105.

Court of Civil Appeals of Texas. Galveston.

Feb. 6, 1941.

Rehearing Denied Feb. 27, 1941.

J. S. Bracewell, of Houston, for appellant.

Andrews, Kelley, Kurth & Campbell, M. E. Kurth, and John E. Cook, all of Houston, and Reid & Strickland, of Goose Creek, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the Eleventh District Court of Harris County, sitting without a jury, denying the appellant any recovery upon her suit herein to establish against the appellee the validity of a claimed school teacher's contract, which she alleged she had with it to·teach in the Goose Creek schools for the school year of 1939–40. She had taught in these schools for the appellee during the prior year, in fact·for some 13 years before that, and declared in

her trial petition that her succeeding employment had been effected between her and the appellee, pursuant to their mutual acceptance of what was termed the "tenure plan"; the substance of and setting under which it was alleged to have so become a valid contract between them, bringing about her re-employment for at least three years, beginning with such year 1939–40, is thus, in material substance, set out in her brief:

"On May 9, 1938, the school board of such district, in co-operation with the teacher's association—herein referred to—and the Superintendent, adopted a tenure plan, and fully set forth in its minutes a form of contract to be used. The contract form so adopted and set forth in the minutes is as follows:

"State of Texas    ⎫
County of Harris   ⎰

"It is hereby agreed by and between the Board of Education of the Goose Creek Independent School District, hereinafter referred to as the party of the first part, and ———, a classroom teacher, hereinafter referred to as the party of the second part, and said teacher shall, under the authority of the board of education and its successors, and subject to the supervision and authority of the properly authorized superintendent of schools, teach in the said school district under the following terms and provisions, to-wit:

"The party of the first part agrees that:

"1. It shall not dismiss from its employ the party of the second part except for the following causes:

"a. Proved charges of inefficiency.

"b. Proved charges of immorality.

"c. Proved charges of willful and persistent violation of the school laws of the State.

"d. Necessary reduction in the teaching staff due to shrinkage of scholastic attendance.

"e. Failure on the part of the teacher to hold a valid certificate or license to teach.

"2. It shall not reduce the monthly or annual salary of said teacher except as a general revision of the salary scale applicble to all other teachers in the employ of the school district would effect such a reduction in salary.

"3. It shall present or cause to be presented to the teacher on or before March 1st, of the current school term, a written statement of the specific charges for which teacher dismissal is sought, and shall allow the teacher the right of a public hearing, if so requested by the said teacher, the hearing to be granted not earlier than fifteen days nor later than twenty days after receipt by the party of the first part of the teacher's request for the hearing.

"The party of the second part agrees that:

"1. It shall not terminate or seek a termination of obligations under said agreement except as shall be satisfactory to the party of the first part.

"2. It shall obey all school laws and regulations and all rules made in accordance with the school laws by the party of the first part.

"3. It shall exercise care in the protection and upkeep of the school property, furniture, fixtures and supplies.

"4. In case it prefers a public hearing on charges for dismissal, it shall file in writing with the secretary of the board of education such a request, within ten days of receipt of the written charges.

"It is further agreed by the parties hereto that this agreement shall continue in force year after year. It is further agreed that all teachers now employed in the said school district or on leave of absence from same, shall be considered to have established tenure.

"It is further agreed that in any reduction in the teaching staff due to shrinkage in scholastic attendance, teachers shall be retained in service in order of their seniority in the Goose Creek Independent School System, subject to the regulations of the State Department of Education, and when additions to the teaching staff are made, the teachers shall be offered re-employment on the basis of their seniority in said school system, subject to the regulations of the State Department of Education.

"It is further agreed that the party of the first part shall not prefer charges for dismissal of a teacher until said teacher has been warned in writing by the superintendent of schools and given an opportunity to correct the conditions provoking the complaint.

"It is further agreed by the party of the first part that whenever it grants a leave of absence to any classroom teacher, such leave of absence, if faithfully observed by the classroom teacher, shall in no manner affect said teacher's tenure in the Goose Creek School System.

"It is further agreed that this tenure agreement may be amended only when such changes are mutually satisfactory to the party of the first part and to a majority of the teachers affected by such change or changes.

"It is further agreed that none of the provisions hereinbefore stated shall be construed to substitute teachers.

"Dated this 17 day of May, 1938.
"Board of Education
"(Signed)  P. W. Hebel, President.
"(Signed)  A. Kisler, Secretary.
"(Signed)  Robert W. Schmidt, President Goose Creek Teachers Association.
"(Signed)  Mrs. E. M. Simmons, Secretary Goose Creek Teachers Association."

"At such time the school teachers were maintaining a voluntary association, known as the 'Goose Creek Classroom Teachers' Association', of which plaintiff was a member. At the same meeting of the Board at which the tenure plan was adopted, but subsequent to its adoption, the Board re-elected the great majority of its teachers 'for the year 1938-39', included among whom was plaintiff. On the 25th day of May, following, plaintiff and others addressed to the school board the following communication:

" 'Goose Creek, Texas
" 'May 25, 1938.

" 'We, the undersigned, jointly and severally agree to accept the contract for employment proffered us by the School Board of the Goose Creek Independent School District, and will abide by its provisions.
" 'Signed:
" 'Ethel Fromen'.

"This letter was received by the school board. On the 11th day of May, 1938, the Superintendent sent to the teachers, including plaintiff, the following communication: 'This is your official notification that you were re-elected as a member of the faculty of the Goose Creek Independent School District for the year 1938-39, subject to assignment by the Superintendent of Schools. You are requested to give us your written acceptance by June 3, 1938.'

"On the 18th day of May, 1938, a formal contract identical with that set forth in the minutes was executed by the president and secretary of the Board of Trustees, and also the president and secretary of the Goose Creek Classroom Teachers' As-

sociation. No separate individual contracts with the teachers themselves were executed. Plaintiff began teaching, and taught through the year 1938-39."

That statement is thus, in part, replied to by the appellee in its brief:

"For many years prior to 1938, the Board of Trustees of the Goose Creek Independent School District had, in accordance with the duties of their office, elected teachers to teach in the schools on a yearly basis, basing their selection in part upon recommendation of the Superintendent of Schools and the various principals. On May 9, 1938, the Board of Trustees met and selected teachers for the school year 1938-39, appellant being one of the teachers selected. On May 11, 1938, notice was sent to appellant advising her of such selection, and offering her employment for such year. The notice also requested appellant to accept the offer by a named date. On May 25, 1938 the appellant, along with other teachers, addressed to the Superintendent of Schools a letter of acceptance, which has been quoted in appellant's statement, supra.

"In consummation of the contract, appellant taught for the school year 1938-39, and no question is here raised as to appellee's recognition of appellant as a teacher for that year. On April 10, 1939, the Board of Trustees rescinded the tenure plan, and held it of no further force and effect. Shortly thereafter, the Board of Trustees decided that it would be to the best interest of the schools that appellant be not re-employed for the year 1939-40, and appellant was so notified. Appellant's present action seeks to impose liability upon appellee because of its failure to permit appellant to teach for the year 1939-40, and thereafter, and it is the position of appellee that its Board of Trustees, having exercised their discretion in the matter of employment of teachers, and having desired not to employ appellant, no liability can be imposed.

"In an effort to allege a cause of action for breach of a contract to teach for the year 1939-40, appellant has attached to her pleadings an exhibit, setting out a so-called 'tenure plan', which said plan purports to be an agreement between the Board of Education of Goose Creek Independent School District 'and———, a classroom teacher'. Such exhibit further states that it is intended to apply to all teachers then employed in the School

District, or on leave of absence from the same. Although there were approximately 180 teachers employed by the School District at that time, and although the exhibit apparently contemplated a signature by an individual teacher, the exhibit, as presented, shows that it was only signed by the officers of the School Board and by the officers of the Goose Creek Teachers' Association, an organization having approximately 67 members. In addition, there is no evidence in the record indicating that the officers of the Teachers' Association had the authority to enter into a contract of employment on behalf of any of its members, or that the officers of the Association were authorized to execute the agreement.

"Upon the trial of this cause, appellee objected to the introduction in evidence by appellant of the 'tenure plan' attached as an exhibit to appellant's petition, on the grounds, among others, that the exhibit was not signed by an individual teacher, and in particular was not signed by appellant; that the Board of Trustees had no power to contract with any association for teachers; that the exhibit was in violation of Article 2781 of the Revised Civil Statutes, Vernon's Ann.Civ.St. Art. 2781; that the exhibit was void as an endeavor on the part of the Board of Trustees to barter away power lawfully vested in them; that the exhibit was on its face unilateral and unenforceable; and that there was no authority on the part of the purported officers of the Teachers' Association to execute the same."

After hearing evidence for both sides, the learned trial court expressly made these among other, findings, in so denying the appellant any relief:

"Findings of the Court.

"This matter presents two legal angles— first, as to whether or not the tenure plan is valid, and, next, as to whether or not it was ever put into effect in so far as the plaintiff is concerned. I want to deal with that in reverse order. The resolution of the Board of Trustees of the Goose Creek Independent School District in May of 1938, in which the so-called tenure plan was adopted, seems to my mind to contemplate a form of individual contract with each teacher, to be formally executed by the contracting parties. Before that time, for many years, by custom, the contracts between the defendant and the teachers were evidenced, first, by an election by the Board, by a letter of notification from the Superintendent and a written acceptance by the individual teacher, written into which understanding, of course, was the scheduled salary for the particular position. On the same day that this tenure plan was adopted by this Board of Trustees, they, by resolution, elected teachers for the school year 1938–1939 by name, the plaintiff being included. Gentlemen, that action of the Board in electing those teachers for that period by name is, to my mind, in direct conflict with the tenure plan; it, to my mind, negatives any intention upon the part of the Board of electing those teachers for that limited time to put them under the benefits of what might be c lled the tenure plan. It is true that if thereafter, upon proper resolution, the tenure plan contract had been signed, as was evidently their purpose, if they intended to put it into effect, a different question might be presented, but it was never signed by the individual teachers; to my mind, the action of the Board in electing these teachers for the year 1938–1939 school year is a distinct limitation. * * *

"Then the question of the validity of this plan comes up. Article 2781 provides that as to school districts of the then scholastic population of this district, contract could be made with teachers for not to exceed three years, and that is the sole statutory authority. Now, without passing upon the merits or demerits of the tenure plan, because that is the province of the Legislature and the Board, it seems to me that this plan is in direct contravention of the public policy of this state, one reason, at least, being that for a third of the school year the Board has, by this plan, completely and absolutely surrendered its authority over the teacher staff, by surrendering all authority to discharge a teacher after March 1st. I will agree with counsel that where there is a valid contract it can only be cancelled by the School Board under certain conditions, but, when a Board attempts to surrender its inherent power to cancel the contract for a third of a term, even when it might have just cause, it is to my mind in contravention of the public policy of this state, and that, if such a tenure contract could in law be deemed, by reason of the facts in this case, to have been executed, that, nevertheless, the same is void."

The record further shows that on April 10 of 1939 the appellee rescinded its "tenure

plan" in toto, in this final order: "A motion was made by L. A. Lovering and seconded by W. K. Robbins, that all resolutions granting tenure plan to employees hereby be rescinded. The vote on this motion was as follows: 'Ayes': Messrs. Hebel, Martin, Lovering, Tipton and Robbins; 'Nos': Messrs. Magness and Kizler. The motion carried."

Without extended discussion, it is the conclusion of this court that the judgment holding no valid contract to have been consummated by the declared-upon proceedings, and the so-called "tenure plan" to have been void and unenforceable, as being in contravention of the public policy of this state, is correct.

Indeed, it seems plain, first, that such scheme or plan was never shown to have been consummated as an agreement between the appellant and the appellee, as therein plainly contemplated; but that, second, if it had been, its provisions would have been in direct contravention of R.S. Article 2781, Vernon's Ann.Civ.St. Art. 2781, which provides, in so far as material, as follows: *"Teachers' contracts.* The Board of Trustees of any city or town or any independent school district may employ a superintendent, principal, teacher, or other executive officers in the schools therein for a term not to exceed three years, provided that the Board of Trustees of an independent school district which had a scholastic population of 5,000 or more in the last preceding scholastic year may employ a superintendent, principal, teacher, or other executive officers in the schools therein for a term not to exceed five years. All twelve-month contracts made by trustees of independent school districts with employees herein mentioned shall begin on July first and end on June 30th of the year terminating the contract."

If these two conclusions be sound, which they are thought to be, it would be a work of supererogation to extend the opinion by developing others.

▐▐ The burden was on appellant of showing that the appellee, through its board of trustees, promised to employ her for the school year of 1939–40, and that she accepted that employment, just as it admittedly appears had been done as to 1938–39; the record fails to show a meeting of that burden by her in any essential particular, there having been shown no conscious undertaking by both parties to assume any such obligation; 10 Tex.Jur. 13, par. 3; 1 Williston on Contracts, par. 64. The trial court has found, both on the facts and the law, that no such contract had been shown, and there is no successful attack upon that finding as being without sufficient support in the evidence.

It is true the board of trustees was shown to have adopted the quoted "tenure plan" earlier on the same day—May 9 of 1938—on which it re-elected appellant for the school year of 1938–39; but there was a hiatus, or missing link, between that adoption and that election of appellant, in that the plan was in no effective way made a part of the contracts with the teachers; on the contrary, as its terms plainly imply, it contemplated that, to become effective, it should be signed both by the school board and the individual teacher affected thereby; whereas, it was in fact only signed by individuals purporting to be officers of a "Teachers' Association", the membership of which was shown to constitute only a little more than one-third of all the teachers in the Goose Creek Schools. Appellant herself never signed such a document, nor was one ever tendered her for her signature, by the undisputed evidence; on the other hand, what she did in this respect has been fully stated in the quotation from her brief, supra, which both the findings of the court and the evidence fully sustain; wherefore, it can be deduced that both sides to the contract of employment for the year 1938–39 merely meant thereby what they said, that the period of that employment was to be for the school year of 1938–39 only, no more nor less; the terms of the "tenure plan" in nowise indicate that such signature "Teachers' Association", through its president and secretary, was signing it on appellant's behalf, nor is there any evidence that it or they had any such authority; so that, even if the adoption of this plan had been a proposed contract for 1939–40 by the appellee to appellant through such "Teachers' Association", no consummation of a binding contract on the part of both parties would result therefrom, since, as indicated, it could not be legally accepted by such a private association for her, and never was by the appellant herself; indeed, as before suggested, there is no indication on the face of that paper, nor any evidence aliunde, that the "Association" either was signing or was authorized to sign it for this appellant. 1 Williston on Contracts, par. 8.

In these circumstances, the appellee was plainly not estopped to deny that it had such a declared-upon contract with appellant for 1939–40, and at least two more years, as she urges, because there having been no such contract pre-existing, estoppel alone could not create a cause of action for one. Massachusetts Bonding & Ins. Co. v. Dallas Steam Laundry, Tex.Civ.App., 85 S.W.2d 937, writ of error refused; Brookfield v. Drury College, 139 Mo.App. 339, 123 S.W. 86.

The gist of appellant's whole contention is, that the "tenure plan" constituted a contract obligating the appellee to retain her as a teacher not only for the school year of 1939–40, but for at least two more of the years, limited to three by R.S. Article 2781, Vernon's Ann.Civ.St. Art. 2781, which admittedly applied to the appellee-district. Its terms, however, do not seem to import any such meaning; to the contrary, there being no definite time prescribed during which it was intended to operate, but only the statement therein that it was to be in force "year after year"; if, therefore, it be taken according to the only express provision it contains in this respect, it would appear to have intended a perpetuity in duration, which obviously would be in contravention of R.S. Article 2781, Vernon's Ann.Civ.St. Art. 2781.

If, on the other hand, it was meant to keep it in duration for an indefinite time, under well-settled authority it would have constituted a tenure terminable at the will of either party. Brown Method Co. v. Ginsberg, 153 Md. 414, 138 A. 402; East Line & R. R. R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99, 13 Am.St.Rep. 758; Hunter v. Strong, Tex.Civ.App., 265 S.W. 539, writ of error dismissed; 1 Williston on Contracts, p. 60, par. 39.

Texas seems to have no law providing for permanent tenure of teachers such as appellant was, cited R.S. Article 2781, Vernon's Ann.Civ.St. Art. 2781, being, instead, an expression of its public policy with reference to the length of terms for which its teachers may be employed.

It would seem to plainly follow that the boards of trustees, without an improper abdication or relinquishment of the authority conferred upon them by such law, may neither employ the teachers themselves for a different or longer time, nor delegate their statutory authority to employ and discharge teachers, as well as otherwise control and administer the affairs of such schools. State v. Board of Regents, 209 Wis. 83, 244 N.W. 618. That this "tenure plan," if given effect, would trench upon such statutory duties so conferred upon boards of trustees in these school districts in Texas is apparent from a mere reading of its recitations; it, therefore, as held by the trial court, is plainly void upon its face, as being opposed to the statutes and public policy of this state.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.