LEAS CAMPBELL, Respondent-Appellant, v. SHERATON CORPORATION OF AMERICA, a Corporation, and CORONADO HOTEL COMPANY, a Corporation, Appellants-Respondents, No. 43058—253 S. W. (2d) 106.

Division Two, November 10, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, December 8, 1952.

*R. C. Reis* for plaintiff-appellant.

*Leo F. Laughren* for defendants-appellants.

BOHLING, C.—Leas Campbell was awarded $15,732.61 damages against Sheraton Corporation of America, a New Jersey corporation, and Coronado Hotel Company, a Missouri corporation, for the breach of a contract. We retain the designation of the parties in the trial court. Each litigant appealed. The trial was to the court, and the review is upon both the law and the evidence as in suits of an equitable nature. (§ 510.310(4), RSMo 1949.)

We do not set out the pleadings as the issues hereinafter discussed are preserved in the record for review. The main controversies relate to whether a letter of April 10, 1948, constitutes a sufficient memorandum of the employment of plaintiff for one year under a contract not to be performed within a year from the making thereof as General Manager of the Sheraton-Coronado Hotel in St. Louis, Missouri, from April 24, 1948, to April 24, 1949, at a salary of $12,000 per year, and the maintenance at said hotel of plaintiff and his family; whether said contract is governed by the laws of the state of Massachusetts with respect to its execution, validity, and interpretation, the contract having been made in Massachusetts, or by the laws of the state of Missouri where it was to be performed; and if plaintiff be entitled to recover under the contract, whether the judgment is excessive, as contended by defendants, or inadequate, as contended by plaintiff upon his appeal.

Defendant Sheraton Corporation performed certain services for defendant Coronado Company. It had authority to employ managers for the Coronado Company, acted as agent for the Coronado Company in the instant transaction, and plaintiff was employed by and was to be paid by the Coronado Company.

Leas Campbell, plaintiff, lives at New Orleans, Louisiana. He had had experience as a manager and owner of hotels. A short time prior to April 8, 1948, he was not employed and, while in New York, he telephoned Ernest Henderson, President of the Sheraton Corporation, in Boston, Massachusetts, on April 4 or 5. He went to Boston and on April 6, 7 and 8 had several conferences with different officials of Sheraton Corporation, including President Henderson, Vice-President and General Manager Elmer E. Boswell and

Vice-President Moore. He testified the last conference was with Mr. Boswell on April 8 and resulted in an oral agreement that plaintiff was employed and would go to St. Louis as General Manager of the Coronado Hotel in St. Louis for one year, beginning April 24, 1948, and ending April 24, 1949; that he understood the salary was payable twice a month and not at the end of the year; and that he asked for a confirmation of his employment.

Mr. Boswell, as defendants' witness, testified that when plaintiff asked for a written contract he informed him they did not employ hotel managers for a definite time because they did not know how satisfactory the employee would be; that the question then arose as to what would happen if plaintiff's services were unsatisfactory, and he informed plaintiff they would give him a month's severance pay; that the only discussion about the payment of the salary was that it would be paid monthly; that he informed plaintiff he would contact his references and if they were not satisfactory, it would afford cause to take whatever action they desired; and that some of the references were not satisfactory, and plaintiff was notified he would not be employed.

Plaintiff relies upon a letter written on the Sheraton Corporation stationery and addressed to him in Louisiana, dated Boston, Mass., April 10, 1948, signed "Sheraton Corporation of America, Elmer E. Boswell, Vice-President," and reading:

"I am glad to confirm our conversation of April 8th; and it is a pleasure to welcome you to the Sheraton Corporation of America as General Manager of the Sheraton Hotel in St. Louis, Mo. The salary is to be $12,000 per year and maintenance for yourself and family consisting of Mrs. Campbell and two children.

"I hardly think it necessary to put this in writing but since you brought up the question, you may feel sure that should your services prove unsatisfactory [108] we shall be glad to give you a month's severance pay. We are quite sure that such will not prove to be the case, and we all have great hopes for your future with the Sheraton Corporation of America.

"Looking forward to meeting you in St. Louis on April 24th at which time I will arrange to make the necessary releases to the trade papers, I am * * *."

Then on April 16, 1948, a letter signed by Ernest Henderson, President of the Sheraton Corporation, advised plaintiff his services would not be needed and, stating they realized plaintiff had been put to considerable traveling expense and inconvenience, enclosed and tendered a check for $400 in full settlement.

Plaintiff, on April 27, 1948, wrote the Sheraton Corporation, stating he was holding them responsible for the breach of his contract of employment and returned the $400 check forwarded to him in the letter of April 16, 1948.

To establish that the execution, validity and interpretation of the contract is governed by the law of Massachusetts plaintiff stresses the cases of Illinois Fuel Co. v. Mobile & O. R. Co., 319 Mo. 899, 8 S. W. 2d 834, 838[1] (including a quotation therein (8 S. W. 2d 1. c. 842) from Scudder v. Union National Bank, 91 U. S. 406, 412, 413, 23 L. Ed. 245) ; Gray v. Metropolitan Life Ins. Co., Mo. App., 150 S. W. 2d 563, 564[4] ; Baxter National Bank v. Talbot (1891), 154 Mass. 213, 28 N. E. 163, 164; and Clark v. State Street Trust Co. (1930), 270 Mass. 140, 169 N. E. 897, 902[5].

The Illinois Fuel Co. case, supra, involved a contract, completed in Missouri, with two non-resident railroads for the purchase of coal at plaintiff's (an Illinois corporation's) mine in Illinois, the coal to be shipped to coal chute points on the lines of the railroads as needed and directed by the individual railroad, the coal company assuming no responsibility for the transportation or charges. In discussing whether the contract was joint and one of the railroads was liable to plaintiff for coal delivered to and used but not paid for by the other, the court said : "The question whether the law of any state has imposed such an obligation as the one here alleged is a question of the law of contracts, and therefore involves the determination of the place of contracting, since the law of that state is the law which imposes the obligation alleged, if any such is imposed, absent proof of a contrary intention of the parties."

The Gray case, supra, involved a policy of life insurance issued and delivered in New York to a resident of New York, upon an application made in New York. Insured thereafter came to Missouri and committed suicide. The contract was held governed by the New York law, and not by the law of Missouri where insured died.

The Baxter National Bank case, supra, was a suit in Massachusetts against the indorser of promissory notes executed in and made payable at plaintiff bank in Vermont. The court applied the law of the place of making, but also stated : "Their contract is presumed to be made with reference to the law of the place where it is entered into, unless it appears that it was entered into with reference to the law of some other state or country." The later Clark case, supra, after stating the nature and interpretation of a contract commonly are governed by the law of the place of making, continued : "A limitation upon this general rule appears to arise when it is manifest that the contract was made with a purpose by the parties that it be performed in a particular place and is to be construed as to its validity and meaning as well as to its mode of performance by the law of that other jurisdiction. [Citing authority.]"

As recognized in the authorities, much confusion exists whether the law of the place of the making of the contract, or the place of its performance, or the place of the intent of the parties governs with respect to its execution, validity and interpretation. See the discussion

in Re De Gheest's Estate, 362 Mo. 634, 243 S. W. 2d 83, 87-90, a case wherein the law of the place of performance, Missouri, (l. c. 91) was applied in ruling the validity of a contract made in [109] France during the German occupation, mentioning (l. c. 88) other Missouri cases. 17 C. J. S. 335, II; 15 C. J. S. 945, § 21; 11 Am. Jur. p. 397, (3). We think different factual situations may call for different results.

With respect to the law of place of performance, the Massachusetts case of Old Dominion Copper Mining & Smelting Co. v. Bigelow (1909), 203 Mass. 159, 174, 89 N. E. 193, 200, 40 L. R. A., N. S., 314, states: "Where a contract is made with a purpose by the parties to it that it shall be performed in a particular place, its validity and interpretation are to be determined by the law of the place where it is to be performed. It is made with a view to that law. [Citing authority.]" The Federal District Court of Massachusetts stated this is the law of Massachusetts in the late case of Wetherell Bros. Co. v. United States Steel Company (May, 1952), 105 F. Supp. 81, 84[2], involving a contract to be executed in Massachusetts.

In Penobscot & Kennebec R. Co. v. Bartlett, 78 Mass. 244, 248, is the following: "The rule is familiar, that if a contract either expressly or by implication is to be performed in a place other than that where it was executed, then, according to the presumed intent of the parties, its validity, obligation and interpretation are to be governed by the law of the place of performance."

Another factor may be given consideration on the instant issue. Our statute of frauds provides, among other things: "No action shall be brought * * * upon any agreement that is not to be performed within one year from the making thereof, unless the agreement * * *, or some memorandum or note thereof, shall be in writing and signed" by the party to be charged or his authorized agent. RSMo 1949, § 432.010.

Under the Missouri law the alleged agreement is within the said statute, it having been agreed upon, according to plaintiff, on April 8, 1948, for completion on April 24, 1949. Truitt v. Rothschild-Greenfield Co., Mo. App., 32 S. W. 2d 770, 772[1]; Waller v. Tootle-Campbell D. G. Co., Mo. App., 59 S. W. 2d 751, 754[2, 3].

Emery v. Burbank (1895), 163 Mass. 326, 39 N. E. 1026, 28 L. R. A. 57, 47 Am. St. Rep. 456, Holmes, J., writing, presented an analogous situation. Plaintiff sought to enforce an oral agreement made in Maine to make a will in favor of plaintiff if plaintiff would come to Massachusetts and take care of the promisor, a Massachusetts resident. A Massachusetts statute required such agreements to be in writing. The court applied the Massachusetts law, stating, among other things: "A contract valid where it is made is valid everywhere, but it is not necessarily enforceable everywhere. It may be contrary to the policy of the law of the forum. [Citing authority.] Or again, if the law of

the forum requires a certain mode of proof, the contract, although valid, cannot be enforced in that jurisdiction without the proof required there. * * * In our view, the statute, whatever it expresses, implies a rule of procedure broad enough to cover this case. * * * All that we decide is that the statute does apply to a case like the present. * * * There would be no question to be argued if the law were in terms a rule of evidence. It is equally open for a state to declare, upon the same considerations which dictate a rule of evidence, that a contract must have a certain form, if it is to be enforced against its inhabitants in its courts.''

Here again there is confusion. 15 C. J. S. 948, § 22, b, f; 37 C. J. S. 514, § 3; 11 Am. Jur. 514,'D; Annotations, 105 A. L. R. 652; 161 A. L. R. 820.

Our statute of frauds (''No action shall be brought'' et cetera) has been considered a rule of evidence affecting the remedy. Houghtaling v. Ball & Chapin, 20 Mo. 563, 566; Condit v. Maxwell, 142 Mo. 266, 275, 44 S. W. 467, 469; Heath v. Beck, Mo. App., 231 S. W. 657, 659[6]; Major v. St. Louis Union Trs. Co., Mo. App., 64 S. W. 2d 296[1].

If we apply the law announced by the Massachusetts courts to the letter of April 10, 1948, which required performance by plaintiff in Missouri, or'to statutory requirements that certain agreements be in writing, the Massachusetts cases place the instant case within the applicable [110] Missouri law. Old Dominion Copper Mining & Smelting Co. v. Bigelow, Wetherell Bros. Co. v. United States Steel Co., and Emery v. Burbank, supra. The instant contract was not to be performed in Massachusetts. The contracting principals did not live there. One was a Missouri resident, and the other was coming to Missouri to perform the contract.

▮ Plaintiff contends the sentence in the letter of April 10, 1948, reading: ''The salary is to be $12,000 per year and maintenance for yourself and family * * *'' made the contract one for a year.

The omission of an essential term of an agreement within the statute of frauds cannot be supplied by oral testimony because the statute requires not only a portion but all of the specified essential elements of the agreement to be in writing. Biest v. VerSteeg Shoe Co., 97 Mo. App. 137, 155, 70 S. W. 1081, 1087; Brookfield v. Drury College, 139 Mo. App. 339, 368, 369, 123 S. W. 86, 95. The requirement that an ''agreement that is not to be performed within one year from the making thereof'' be in writing is as essential a provision of the statute as other provisions requiring a writing. Waller v. Tootle-Campbell D. G. Co., Mo. App., 59 S. W. 2d 751, stating l. c. 755: ''The employment for a year is a vitally important provision, for if that is not in the contract then plaintiff has no cause of action herein.''

The statement, ''The salary is to be $12,000 a year,'' fixed the salary but did not fix the duration of the employment. The instant writing,

as the writing in the Brookfield case, did not state when the agreement should end or how the payments were to be made. "The law in this state has been well stated that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time, and no action can be sustained in such case for a wrongful discharge." Brookfield v. Drury College, 139 Mo. App. 339, 365, 123 S. W. 86, 94, citing cases; Smith v. Geo. H. Weyer, Inc., Mo. App., 224 S. W. 2d 543, 546[3, 4], citing cases. Like contracts executed in Missouri between Missouri citizens are not enforced in Missouri courts as agreements not to be performed within one year from the making if the statute of frauds be interposed as a defense.

The letter of April 10, 1948, was written at the request of plaintiff. The sentence "I hardly think it necessary to put this in writing but since you brought up the question, you may feel sure that should your services prove unsatisfactory we shall be glad to give you a month's severance pay" infers that plaintiff understood defendants could terminate his employment upon the payment of a month's severance pay.

Plaintiff's cited cases of Barnett v. Western Union Teleg. Co., Mo. App., 287 S. W. 1064, 1067[2, 3], and Truskett v. Rice Bros. Live Stock Comm. Co., Mo. App., 180 S. W. 1048, 1049, present no conflict. They did not rule the instant issue. The writing in the Truskett case stated: "I employed her [plaintiff] for the period of one year at a salary of one hundred dollars per month."

A claim for the breach of a contract not to be performed within a year from the making thereof is not established. However, giving consideration to all the transactions occurring and without expressing an opinion on the merits of the issue, plaintiff may have a claim involving a month's salary and maintenance for himself and family. Accordingly, the judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.