**Jerome James ANSELMO, Plaintiff,**

v.

**MANUFACTURERS LIFE INSURANCE COMPANY, Defendant.**

**No. 83–0449–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Sept. 19, 1984.

Hollis H. Hanover, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, Mo., for plaintiff.

Edwin L. Noel, Jordan B. Cherrick, Francine C. Israel, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., John A. Vering, III, Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

BARTLETT, District Judge.

Defendant, Manufacturers Life Insurance Company, has moved for summary judgment on all counts of plaintiff's complaint. Defendant asserts that it is entitled to summary judgment as a matter of law:

1) On plaintiff's breach of contract for wrongful discharge claim (Count I) because a) plaintiff was an employee-at-will; and b) plaintiff's asserted oral agreement for a definite term of employment violates Missouri's statute of frauds, Mo.Rev.Stat. § 432.010 (1978);

2) On plaintiff's prima facie tort claim (Count II) because no such cause of action exists for the termination of an employee-at-will contract and plaintiff has failed to plead all the essential elements of a prima facie tort;

3) On plaintiff's claim of fraudulent misrepresentation (Count III) because any promise by defendant to employ plaintiff for three years was not a representation of fact; and

4) On each of plaintiff's claims because plaintiff released defendant from any liability for the claims made in this lawsuit.

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the plaintiff and to allow plaintiff the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.1979), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). However, summary judgment is an extreme remedy which should not be granted unless

defendant has established his right to judgment beyond controversy. *Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014, 1015 (8th Cir.1973); *Oskey Gasoline and Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1285 n. 9 (8th Cir.1976).

Although defendant disputes plaintiff's version of the facts in the case, defendant bases its motion for summary judgment on the facts stated by plaintiff in his deposition. The Court adopts plaintiff's version of the facts for purposes of ruling on this motion.

Plaintiff (Anselmo) began employment discussions with defendant (Manufacturers Life) in the spring of 1980. After a series of conversations and interviews, plaintiff went to work for defendant on July 15, 1980.

Plaintiff received a letter dated August 18, 1980, from a representative of defendant which detailed the terms of plaintiff's compensation. Plaintiff received a second letter dated June 25, 1981, which addressed the same subject. Plaintiff received another letter dated January 12, 1982, which addressed his income package. Plaintiff contends that these three letters are the employment contract.

On June 28, 1982, Iain Scott, an employee of defendant, told plaintiff that his employment was ended. Scott told plaintiff not to return to defendant's office and gave him a letter of resignation to sign. The resignation letter provided, in part, that "[a]ll payments agreed to in this letter are in complete discharge of all obligations under your Branch Manager's appointment, except as may be accrued under the company's Pension Plan." Plaintiff was told that if he signed the resignation letter he would receive severance pay amounting to four months salary. If he did not sign the letter, plaintiff was told that he would receive no severance pay and that the company would not give him references for future employment. Anselmo contacted his attorney about the letter before he signed it on the following day. When he signed the letter, he understood it. The relevant provisions of the resignation letter provide:

In accordance with our discussions, this is to confirm that you will receive four months' compensation at your present guaranteed monthly rate beginning July 1, 1982, and ending October 31, 1982. You may elect to receive the compensation monthly, or in one lump sum. Please indicate your choice below.

All payments agreed to in this letter are in complete discharge of all obligations under your Branch Manager's appointment, except as may be accrued under the Company's Pension Plan.

Thereafter, plaintiff received from defendant a check in the amount of $13,933.33 which he cashed.

■ This Court's jurisdiction is based solely upon diversity of citizenship, 28 U.S.C. § 1332 (1983). In such cases, the appropriate choice of law is "the law of the state where the cause arose." *Gabauer v. Woodcock*, 520 F.2d 1084, 1094 (8th Cir. 1975). Plaintiff was employed in Missouri, any employment contract that existed was executed in Missouri, and plaintiff's employment was terminated in Missouri. Therefore, this Court will apply Missouri law in ruling the issues raised by defendant's motion.

### BREACH OF CONTRACT

Count I of plaintiff's petition alleges that defendant arbitrarily, unreasonably and without cause terminated Anselmo's employment with defendant.

■ "[I]n the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such cases no action can be obtained for wrongful discharge." *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981) quoting from *Christy v. Petrus*, 365 Mo. 1187, 1189, 295 S.W.2d 122, 124 (en banc 1956).

Therefore, unless there was an employment contract which provided either a term of employment or that plaintiff could only be dismissed with cause or unless there was a statute providing similar rights, plaintiff's wrongful discharge claim must be dismissed for failure to state a cause of action. *Cooper v. City of Creve Coeur*, 556 S.W.2d 717, 720 (Mo.App.1977); *Culver v. Kurn*, 354 Mo. 1158, 193 S.W.2d 602, 603 (Mo.1946).

Plaintiff asserts that the employment agreement consisted of the letters from defendant to plaintiff which are dated August 18, 1980; June 25, 1981; and January 12, 1982, together with commercially reasonable implicit terms. For purposes of this motion, defendant agrees that these letters constitute the employment contract.[1] Accordingly, for the purpose of ruling on the motion for summary judgment, it will be assumed, as plaintiff asserts, that the employment contract in effect when he was terminated was the three letters.

### *Employment Term*

■ If the three letters are unambiguous the Court may construe them to determine whether, as a matter of law, they provided for a specific term of employment. *Harber v. Ohio National Life Ins. Co.*, 512 F.2d 170 (8th Cir.1975); *Commerce Trust Co. v. Howard*, 429 S.W.2d 702 (Mo.1968). Whether a contract is ambiguous is a question of law for the Court. *Slotkin v. Willmering*, 464 F.2d 418, 422 (8th Cir. 1972). "A contract is ambiguous only when it is reasonably susceptible of different constructions. In determining whether or not there is such an ambiguity ... the whole instrument must be considered." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. en banc 1973). Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language. Even seeming contradictions must

---

1. Although defendant contends that Anselmo's employment contract is the "Branch Manager's Agreement" which was signed by plaintiff on April 2, 1981, as supplemented by the compensa-

tion letter dated April 2, 1981, defendant concedes plaintiff's position for purposes of ruling on this motion that the contract is made up of the documents suggested by plaintiff.

be harmonized away if that is reasonably possible. *State Mutual Life Assur. Co. of Worchester v. Dischinger,* 263 S.W.2d 394, 401 (Mo.1953).

Each of the three letters comprising the employment contract describes Anelsmo's "income package" or "compensation agreement." Each letter provides that Anselmo would receive a base or "guaranteed salary" plus a potential bonus. For instance, the relevant portion of the January 12, 1982, letter provides:

> Pursuant to our telephone conversation of January 6, the following will form the basis of your 1982 and 1983 compensation agreement.
>
> Effective January 1, 1982 you will be compensated at a level annual salary of $55,000. This level of compensation is effective through the end of 1982 and 1983. In addition to the guaranteed salary in both years, you will be eligible for a potential bonus. In 1982, the potential bonus would be equal to $10,000 and in 1983, the potential bonus would be equal to $20,000. The respective maximum salary in each year would be $65,000 in 1982 and $75,000 in 1983. At the end of the 1983 year, you will effectively be on the full contract.
>
> .      .      .      .      .
>
> The following visualizes your 1982 and 1983 income arrangements:
>
> | 1982 | Guaranteed Salary | $55,000 |
> |------|-------------------|---------|
> |      | Potential Bonus   | 10,000  |
> |      |                   | $65,000 |
> | 1983 | Guaranteed Salary | $55,000 |
> |      | Potential Bonus   | 20,000  |
> |      |                   | $75,000 |
> | 1984 | Full Contract     |         |
>
> You may decide at anytime to go on full formula without the benefit of the guaranteed base or bonus at any point during the 1982 or 1983 year....

Plaintiff contends that defendant employed him for a three year term, because the contract projects salary over three years and because it states that a specific salary is "guaranteed." Defendant argues that the term "guaranteed" is used to distinguish defendant's base salary from additional compensation plaintiff could receive from bonuses and that a writing projecting salary over three years does not establish a contract for that term.

■ Plaintiff's employment contract was not ambiguous simply because the parties disagree about the meaning of "guarantee" as it is used in the contract and about the significance of projected salary figures. *Mickelberry's Food Products Co. v. Haeussermann,* 247 S.W.2d 731, 738 (Mo. 1952); *J.E. Hathman,* 491 S.W.2d at 264.

■ The term "guaranteed salary" used in the contract does not mean that plaintiff's employment is guaranteed for a specified number of years, but rather addresses the level of salary which plaintiff would receive regardless of his level of performance. "Guarantee" distinguishes Anselmo's base salary from the bonus he would receive if warranted by his performance.

■ Furthermore, an agreement which merely sets out levels of salary over a period of years does not amount to a contractual undertaking to employ that person for those years. In *Campbell v. Sheraton Corp. of America,* 363 Mo. 688, 253 S.W.2d 106, 110 (1952), the Court addressed an employment letter which provided that "[t]he salary is to be $12,000 per year and maintenance for yourself and family." *Id.* 253 S.W.2d at 107. The Supreme Court of Missouri held that the letter fixed the salary but did not fix the duration of employment. *Id.* 253 S.W.2d at 110. Similarly, in *Young v. A–T–O, Inc.,* 484 F.Supp. 626, 628 (E.D.Mo.1980), the Court concluded that language in an employment agreement charting pay levels for five years did not amount to an agreement to employ Young for that length of time. Therefore, in the instant case, the description in the three letters of Anselmo's future compensation did not imply that defendant had agreed to employ plaintiff for any term.

*Oral Agreement for Definite Term*

Anselmo contends that Manufacturers Life orally agreed to a three-year contract of employment. This agreement was purportedly made at a pre-employment luncheon meeting with Gordon Woodward of Manufacturers Life. Defendant asserts that proof of such an oral contract would violate the statute of frauds.

■ Mo.Rev.Stat. § 432.010 (1952) provides that "[n]o action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement ... shall be in writing." In *Satterfield v. Missouri Dental Ass'n.*, 642 S.W.2d 110, 112 (Mo. App.1982), the Court held that an employment agreement for a definite term in excess of one year was subject to the statute of frauds. A motion to dismiss should be granted if it "appears that the contract in question is unwritten and the plaintiff fails to plead facts which would take the contract out of the operation of the statute." *Id.*

■ The alleged oral agreement to hire plaintiff for three years could not be performed within one year. Therefore, unless the statute of frauds is complied with, plaintiff cannot sue on the alleged oral agreement.

The three letters relied upon by plaintiff do not satisfy the requirements for the statute of frauds. In *Young*, 484 F.Supp. at 628, the Court held that to comply with the statute of frauds a writing must contain all of the essential terms of the agreement, one of which is the duration of the employment relation. Here, the writings relied upon by plaintiff do not include the duration of the employment relationship.

Anselmo cannot supply this missing term by proof of the alleged oral agreement. "The omission of an essential term of an agreement within the statute of frauds cannot be supplied by oral testimony because the statute requires not only a portion but all of the specified essential elements of the agreement to be in writing." *Campbell*, 253 S.W.2d at 110.

For the reasons stated above, defendant's motion for summary judgment on plaintiff's wrongful discharge cause of action (Count I) will be granted.

## PRIMA FACIE TORT

Count II of plaintiff's complaint alleges that:

2. Defendant, by and through its agents, in terminating plaintiff intended to inflict and did inflict injury on plaintiff in addition to and in excess of actual termination of plaintiff's employment.

3. That said additional injury was intentionally, knowingly and willfully inflicted upon plaintiff by defendant's agents in furtherance of the business interests of defendant and in the course and scope of said agent's employment by defendant.

■ The parties agree that plaintiff is attempting to allege a prima facie tort. The elements of a prima facie tort are:

1) an intentional lawful act by the defendant;

2) an intent to cause an injury to the plaintiff;

3) injury to the plaintiff; and

4) an absence of any justification or an insufficient justification for the defendant's act.

*Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo.App.1980).

In his complaint, plaintiff did not plead the element of "absence of justification or insufficient justification." In *Lohse v. St. Louis Childrens Hospital, Inc.*, 646 S.W.2d 130, 131 (Mo.App.1983), the Court held that failure to plead this element was fatal to a cause of action for prima facie tort and that dismissal of the court by the trial court was appropriate.

However, even if plaintiff had pled absence of justification or insufficient justification in his complaint, plaintiff cannot establish this element as a matter of law. In *Lundberg v. Prudential Ins. Co. of America*, 661 S.W.2d 667, 671 (Mo.App.1983), the Court stated that prima facie tort would not be used to convert an employment-at-

will into a relationship which could be terminated only for cause. The Court stated that

> [j]udicial invasion of management decisions and impingement upon agreed terms of employment emerge, when, as here, the prima facie tort doctrine is resorted to by a discharged employee to impose liability against an employer where the employment is terminable at will. Under an unadulterated 'balancing of interests' process, conversion of employment relationships terminable only for good cause under the guise of prima facie tort will have to be postulated on facts vastly different from those presented by the instant case.

*Id.*

■ In both *Lundberg* and this case, the plaintiff was a staff sales manager for an insurance company. Neither plaintiff had an employment contract for a specific term. Although Lungberg was demoted to Sales Agent, while Anselmo was terminated, both plaintiffs contend that the action was wrongful and without cause.

Therefore, for the reasons stated above, defendant's motion for summary judgment on plaintiff's prima facie tort cause of action (Count II) will be granted.

## FRAUDULENT MISREPRESENTATION

In Count III of plaintiff's Second Amended Complaint, plaintiff seeks to allege a cause of action for fraudulent misrepresentation based on his contention that he was told at the time he was hired that he would be guaranteed a salary for three years.

■ "The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future." *Yerington v. Riss,* 374 S.W.2d 52, 58 (Mo. 1964). Also, an action for fraud cannot be based upon a mere promise. *Reed v. Cooke,* 331 Mo. 507, 55 S.W.2d 275 (banc 1932).

The Supreme Court of Missouri in *Godwin v. Dinkler St. Louis Mgt. Corp.,* 419 S.W.2d 70 (Mo.1967), squarely addressed the consequences of an allegedly false promise to employ someone for a term. In that case, defendant told plaintiff that he would be employed for at least five years. The Court characterized such a representation as a "mere promise" and affirmed the trial court's summary judgment. "Fraud cannot be predicated upon a mere promise even though accompanied by a present intention not to perform it on the ground that even under such circumstances the promise is not a misrepresentation of an existing fact." *Id.* at 72–73.

■ In the instant case, defendant allegedly promised to employ plaintiff for three years. Based on *Godwin,* this is not a representation of fact. Therefore, plaintiff cannot use it as the basis of a fraudulent misrepresentation claim.

For the reasons stated, defendant's motion for summary judgment on plaintiff's fraudulent misrepresentation cause of action will be granted.

## THE RELEASE

Plaintiff does not deny that he signed a letter of resignation and that the letter discharges defendant from any liability arising out of his employment. However, plaintiff contends that the release is invalid because no consideration was given for the release and because the release was obtained by duress.

■ Where there is no dispute as to the execution of a release, the burden is on the party attacking the release to establish his invalidity. *McMahon v. Meredith Corp.,* 595 F.2d 433, 438 (8th Cir.1979); *Jenkins v. Simmons,* 472 S.W.2d 417, 420 (Mo.1971).

### Consideration for the Release

■ A release is a "written contract of compromise and settlement." *Stahly Cartage Co. v. State Farm Mutual Auto. Ins. Co.,* 475 S.W.2d 438, 441 (Mo.App. 1971); *Foster v. Aetna Life Ins. Co. of Hartford, Conn.,* 352 Mo. 166, 176 S.W.2d

482, 485 (Mo.1943). It must be supported by consideration and once executed "the releasee's cause of action is barred and he is estopped from proceeding against the releasor...." *Lugena v. Hanna,* 420 S.W.2d 335, 340 (Mo.1967); *Gee v. Nieberg,* 501 S.W.2d 542, 544 (Mo.App.1973). *Grand Motors, Inc. v. Ford Motor Co.,* 564 F.Supp. 34, 39 (W.D.Mo.1982).

■ Plaintiff contends that there was no valid consideration because he had been employed for three years. Therefore, according to plaintiff, at the time he signed the resignation letter, he had a liquidated claim to $80,000, the amount remaining to be paid on his three-year contract. Plaintiff relies on *Western Life Ins. Co. v. White,* 331 S.W.2d 19, 26 (Mo.App.1959) for the proposition that release of a liquidated claim is not binding without independent consideration. Plaintiff's statement of the law is correct, but his application of this principle to this case is erroneous.

■ A claim is unliquidated if (1) the parties do not agree on the amount of the alleged claim; *or* (2) the alleged claim is based on the disputed or doubtful interpretation of a contract. *Hall v. Knapp,* 552 S.W.2d 299, 303 (Mo.App.1977). Anselmo's claim to the balance allegedly due him under his interpretation of the employment contract is unliquidated under either of the *Hall* tests. The parties do not agree on the amount of plaintiff's claim. In his complaint, Anselmo requested $200,000 in actual damages under Counts I and II. In his opposition to defendant's motion for summary judgment, plaintiff states that his claim is approximately $80,000. In response to interrogatories by defendant, plaintiff states that the amount of his loss of income due to loss of guaranteed amounts under the contract is not yet computed. Defendant contends that it owes Anselmo nothing.

Furthermore, plaintiff's claim is based on a disputed interpretation of the employment contract. Plaintiff contends that there was an employment contract that guaranteed employment for a specified term. Defendant contends that the parties never agreed to the length of time plaintiff would be employed. Therefore, plaintiff's contention that he had a liquidated claim to more money than was paid to him after he signed the letter is without merit.

*Duress*

According to plaintiff's version of what happened on June 28, 1982, and June 29, 1982, he was forced to sign the release because of the pressure created by defendant. Defendant's representative, Scott, had come from Toronto. After the meeting between Scott and plaintiff, plaintiff was forbidden to return to the branch office. Plaintiff was offered the resignation letter and told to sign it. If plaintiff signed the resignation letter, he would receive four months severance pay. If he refused to sign the release, he would not receive severance pay and he would be denied references for future employment. Scott then went to the branch office and told the employees that Anselmo had resigned. This made it too embarrassing for Anselmo to return to work. Anselmo did contact a lawyer but he received no legal advice. Anselmo delivered the signed release to defendant on the following day.

■ This Court may decide on a motion for summary judgment whether certain facts are sufficient to constitute duress. In *Oskey Gasoline & Oil Co., Inc. v. Continental Oil Co.,* 534 F.2d 1281, 1286 (8th Cir.1976), the Court stated that "[i]n general, whether the particular facts, as alleged, are sufficient to constitute a defense of duress is a matter of law for the Court while the question of whether the facts alleged actually exists is a jury issue." Having accepted as true plaintiff's version of the facts for purposes of this motion, the legal issue of whether these facts constitute duress is properly presented.

■ Whether sufficient duress exists to invalidate a release depends on "whether or not the victim was so acted on by threats of the person claiming the benefit of the contract as to be bereft of the quality of mind essential to the making of a

contract, and whether or not the contract was thereby obtained." *Wolf v. St. Louis Public Service Co.*, 357 S.W.2d 950, 954–55 (Mo.App.1962). The party tendering the release must have engaged in some *wrongful act* which rendered releasor unable to exercise his free will. *Grant Renne & Sons, Inc. v. J.E. Dunn Const. Co.*, 633 S.W.2d 166 (Mo.App.1982). Acceptance of a settlement offer as a result of circumstances and conditions over which the defendant had no control, such as the releasor's "financial necessities," does not constitute duress. *McCormick v. City of St. Louis*, 166 Mo. 315, 65 S.W. 1038, 1043–44 (1901).

■ Here, plaintiff's termination was not wrongful because plaintiff was an employee-at-will. The lawful termination of an employee may generate stress but not legal duress. The refusal of defendant to grant severance pay unless the release was signed is not a wrongful act because plaintiff had no right to severance pay.[2] Similarly, defendant's refusal to provide a favorable referral letter was not a wrongful act that constituted duress because plaintiff had no right to a favorable referral letter.

Even if Scott had informed the other employees that Anselmo had resigned before the release was executed, duress has not been shown. Anselmo may have suffered some embarrassment as a result of Scott's actions, but this was not a coercive act directed at forcing defendant to sign the release.

■ Plaintiff contends that Scott told him that he must sign the release. This would not amount to duress because plaintiff did not sign the release until the following day. Plaintiff had ample opportunity to consider whether he would sign the release during this period. In fact, he even took the release to an attorney although he denies that he got any legal advice. Plaintiff's facts do not indicate that whatever pressure Scott exerted deprived him "of

the quality of mind essential to making of a contract" as required by the *Wolf* case. Plaintiff has not alleged any facts which would constitute wrongful or oppressive acts *by the defendant.* If defendant acted wrongfully in this case, it could only be because it wrongfully terminated plaintiff's employment. That alone cannot support a finding of duress. Although plaintiff may have signed the release because he desperately needed money, *McCormick* makes it clear that the financial necessities of the plaintiff are not a sufficient basis for the Court to find duress.

■ Voluntary settlement of disputes, accompanied by releases, must be encouraged. Not only are the parties to the dispute benefitted by knowing where they stand and by avoiding litigation expenses, but our strained judicial system need not provide a method for resolving the dispute.

In this case, defendant attempted to resolve this dispute in June, 1982, by offering to pay to plaintiff a substantial amount of money. Plaintiff accepted the money without reservation. The circumstances presented by plaintiff for wanting to avoid the release do not justify interfering with the parties' joint efforts to settle their disputes.

Accordingly, even if summary judgment were inappropriate on some of plaintiff's counts, plaintiff's release effectively foreclosed defendant's liability on all counts in this lawsuit.

### Order

For the reasons stated, defendant's motion for summary judgment is granted and judgment is rendered in favor of defendant and against plaintiff on all counts of plaintiff's complaint. This case is hereby dismissed with prejudice at plaintiff's cost. The pretrial conference scheduled for September 26, 1984, at 2:30 p.m., is cancelled.

IT IS SO ORDERED.

---

**2.** Defendant asserts that the $13,933.33 was paid only for the release and not because Anselmo was entitled to any severance pay as a matter of

right. Plaintiff does not contend that he had any claim for severance pay except as a result of the resignation letter.