

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

August 7, 2000

The Honorable Russell W. Malm
Midland County Attorney
200 West Wall Street, Suite 104
Midland, Texas 79701

Opinion No. JC-0263

Re: Authority of a sheriff to organize and participate in S.T.A.R. [Sheriffs of Texas Agreed Response], a law enforcement tactical response team (RQ-0199-JC)

Dear Mr. Malm:

You ask a number of questions regarding the authority of the Sheriff of Midland County to organize and participate in the Sheriffs of Texas Agreed Response program ("STAR"). We conclude that, as you have described the program, the Sheriff is without authority to do so. We begin with a summary of the background of this request.

You advise:

The Midland County Sheriff, along with a number of other Texas Sheriffs, has organized a group known as "Sheriffs of Texas Agreed Response" (hereafter "STAR"). STAR is a law enforcement tactical response team. The Midland County Sheriff, along with the other participating law enforcement personnel, have been conducting training activities for STAR. One of the stated purposes of STAR is "to form a mutual aid law enforcement tactical response team to cooperate and provide a ready response to situations necessary to protect health, life and property in the county or municipalities because of disaster, riot, or threat of concealed explosives, or unlawful assembly characterized by force and violence or the threat of force and violence by three or more persons acting together or without lawful authority where situations are beyond the capabilities of normally equipped and trained law enforcement agency personnel."

Originally, Sheriffs desiring to participate in the STAR program were required to sign the agreement attached as Exhibit "A." This agreement was drafted by a Texas attorney. That agreement states that it is done pursuant to the powers granted under Article XI, Section 5 of the Texas Constitution, Article 791 of the Texas Government Code, and Chapter 362 of the Texas Local Government

Code. The Midland County Judge questions the legal authority of a Sheriff to contract with other counties and conduct such operations. The Midland County Judge also believes that the concept of the STAR program is in conflict with the Emergency Management System set up by Chapter 418 of the Government Code. The Midland County Sheriff believes that he and other Texas Sheriffs have the legal authority to participate in such a program.

The Midland County Sheriff has advised me that the agreement attached as Exhibit "A" is no longer being used by parties participating in STAR. Sheriffs or other law enforcement agencies wishing to participate in the STAR program are now being required to sign the agreement attached as Exhibit "B."

Letter from Honorable Russell W. Malm, Midland County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (Mar. 3, 2000) (on file with Opinion Committee) [hereinafter "Request Letter"].

Exhibit A is denominated "S.T.A.R. Operational Agreement." It is a six-page document by which participating peace officers "agree to form and by this agreement do form a mutual aid law enforcement tactical response team." Request Letter ("Exhibit A"). Its purpose is "to provide a ready response to situations beyond the capabilities of normally equipped and trained law enforcement agency personnel." *Id.* A STAR participant agrees to "assign its law enforcement officers to provide tactical support duties inside and outside of the member's territorial limits . . . when requested by the chief law enforcement officer, or his designee." *Id.* While a peace officer is "in the service of a requesting member," he or she is "a peace officer of the requesting member . . . with all the powers of a regular peace officer, as fully as though he/she were within the territorial limits of the governmental entity where he/she is regularly employed." *Id.*

You indicate that the Exhibit A "operational agreement" is no longer being used by parties participating in STAR. Sheriffs or other law enforcement personnel wishing to participate in the program are now being required to sign the agreement attached as "Exhibit B." Request Letter at 1. Exhibit B, denominated "STAR Cooperative Working Agreement," reads, in its entirety, as follows:

This is to certify that the objectives of S.T.A.R. have been reviewed and that it is mutually agreed to cooperate to whatever extent is available in providing a ready response to situations necessary to protect health, life, and property to any agreeing Sheriff of Texas requesting same.

>       Additionally, the Sheriff of _____ County,
> Texas is cognizant of the procedures governing the operation of
> S.T.A.R. and agrees to such procedures.
>
> **SIGNED:**

*See* Request Letter ("Exhibit B"). You first ask whether a sheriff may contract with other sheriffs or with municipalities without the approval of the commissioners court of his county. We will address this matter first in terms of the Exhibit A agreement and then with regard to the Exhibit B agreement.

There is no question that the written "operational agreement" [Exhibit A] is a contract. A contract is simply a deliberate or voluntary agreement between competent parties, made on sufficient legal consideration, to do or not do a particular act or thing. *Phelps & Johnson v. Zuschlag*, 34 Tex. 371 (Tex. 1870); *Fromen v. Goose Creek Indep. Sch. Dist.*, 148 S.W.2d 460 (Tex. Civ. App.–Galveston 1941, writ dism'd). The "consideration" required for a valid contract is defined as either a benefit to a promisor or a loss or detriment to a promisee. *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998). In the circumstances you have described, both parties to the "operational agreement" promise to provide, and receive, law enforcement services, as requested.

The "cooperative working agreement" [Exhibit B] is slightly more problematic. It might be argued that the first sentence, in which the parties agree "to cooperate to whatever extent is available," is not sufficient, without more, to create a contract. "An alleged agreement which is too vague, indefinite and uncertain is not an enforceable contract." *Wiley v. Bertelsen*, 770 S.W.2d 878 (Tex. App.–Texarkana 1989, no writ). On the other hand, when an agreement itself provides a standard to be applied in determining an element of a contract, the contract is sufficiently definite to be enforceable. *Cap Rock Elec. Coop. v. Texas Utils. Co.*, 874 S.W.2d 92, 100 (Tex. App.–El Paso 1994, no writ). In our opinion, the uncertainty of "to whatever extent is available" can be determined to be certain in any particular instance. In any event, the second sentence of the "cooperative working agreement" in all likelihood creates a contract. We have not been informed of the "procedures governing the operation of STAR," but we assume for purposes of this opinion that they encompass at least some of the provisions of the previous "operational agreement." To the extent that the Sheriff, as a party to the agreement, promises to provide to, and receive from, any other party the law enforcement services described in the "operational agreement," the "cooperative working agreement" must be deemed a "contract." On the other hand, if the "cooperative working agreement" does not constitute a contract, it is simply a nullity: no party has agreed to do anything.

With these principles in mind, we answer your first, second, and fourth questions in the negative. Unless a statute expressly grants the sheriff or other county official the authority to contract for the county, the general power to make contracts binding upon a county belongs to the commissioners court. *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941); Tex. Att'y Gen. Op. Nos. JC-0214 (2000) at 7; DM-111 (1992); DM-67 (1991). A number of statutes grant to a sheriff

the authority to enter into agreements in limited circumstances. *See, e.g.,* TEX. FAM. CODE ANN. § 261.3019 (Vernon Supp. 2000) (authorizing contracts between a sheriff and the Department of Protective and Regulatory Services); TEX. GOV'T CODE ANN. § 511.012 (Vernon 1998) (authorizing agreements between sheriffs regarding the transferring and receiving of prisoners); TEX. LOC. GOV'T CODE ANN. § 351.0415 (Vernon 1999) (authorizing sheriff to contract with a person to operate a jail commissary). We find no provision in Texas law authorizing a sheriff to enter into the kind of contract you have described. On the contrary, chapter 362 of the Local Government Code, which permits a local governmental body to "provide for . . . its regularly employed law enforcement officers to assist another county, municipality, or joint airport," requires that such assistance be authorized "by resolution or order of" the local governmental entity's "governing body." TEX. LOC. GOV'T CODE ANN. § 362.002 (Vernon 1999). We conclude therefore that a sheriff may not contract with other sheriffs or municipalities to provide general law enforcement services, including investigatory services, without the approval of the commissioners court of his county.

But even if, as the Sheriff seems to contend, the effect of the "cooperative working agreement" is altogether nugatory, it does not follow that the Sheriff may, without benefit of contract or agreement, furnish the kind of law enforcement services contemplated by either of the agreements. Thus, your next question is whether a sheriff, "without the consent of the Commissioners Court of his County [may] temporarily provide law enforcement assistance, in the form of manpower and resources, to another Texas Sheriff at the request of the other Texas Sheriff and under the direction and authority of the requesting Sheriff for the protection of life and property in the requesting Sheriff's county, during times of natural or man-made disasters." We have already noted chapter 362 of the Local Government Code. The provisions in that chapter authorize one local governmental body to provide the assistance of its law enforcement officers to another such body. Assistance is limited to situations of "civil emergency," when "additional law enforcement officers [are] necessary to protect health, life, and property . . . because of disaster, riot, threat of concealed explosives, or unlawful assembly characterized by force and violence or the threat of force and violence by three or more persons acting together or without lawful authority." *Id.* Furthermore, the Sheriff is not empowered to provide this assistance on his own. Rather, the "governing body," in this case the commissioners court, must authorize the deployment of these additional personnel.

The Sheriff in the present instance relies in part on amendments to article 14.03(d) of the Code of Criminal Procedure that have expanded a peace officer's authority to make arrests outside his jurisdiction. The Sheriff contends that those amendments now authorize him to conduct general law enforcement activities, including investigations, outside the county for which he was elected. In Attorney General Opinion DM-77, this office considered whether the Sheriff of Midland County was permitted to engage in law enforcement activities outside of his county. Tex. Att'y Gen. Op. No. DM-77 (1992). The sheriff who was the subject of that inquiry had relied in part on article 14.03(d) of the Code of Criminal Procedure, which at that time authorized a peace officer outside his jurisdiction to arrest without warrant a person "who commits an offense within the officer's presence or view, if the offense is a felony or a violation of Title 9, Chapter 42, Penal Code," which relates to disorderly conduct and similar offenses. The question before the attorney general in DM-77 was whether subsection (d) of article 14.03 "extended the authority of a sheriff to initiate

investigations and make arrests outside his county." *Id.* at 3. The opinion found that "[a]rticle 14.03(d) in fact makes clear that a peace officer's authority is, in general *limited* to his geographical jurisdiction." *Id.* (emphasis added). The opinion noted that an officer making an arrest under that provision was required by the statute "as soon as practicable after making the arrest [to] notify a law enforcement agency having jurisdiction where the arrest was made." *Id.* The local agency was then directed to "take custody of the person committing the offense and take the person before a magistrate." *Id.* In the view of Attorney General Opinion DM-77, "the thrust of article 14.03(d) is to define rather narrowly the limits of a peace officer's authority outside his own jurisdiction." *Id.* at 3. That authority did not extend to the investigation of criminal activities outside his county.

Since the issuance of Attorney General Opinion DM-77, the legislature has added to the offenses in article 14.03(d) for which a peace officer may make an arrest outside his jurisdiction. He may now arrest for "breach of the peace," and for "an offense under Section 49.02, Penal Code," which relates to public intoxication. The statute's previous restrictions, relating to bringing in the law enforcement agency of the foreign jurisdiction, remain intact. In 1995, the legislature also added subsection (g) to article 14.03, which provides:

> A peace officer listed in Subdivision (1), (2), (3), (4), (5), Article 2.12, who is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code [relating to moving traffic violations], only if the officer is listed in Subdivision (4), Article 2.12. A peace officer making an arrest under this subsection shall as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06.

TEX. CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp. 2000).

Thus, as it has been amended since 1992, article 14.03 now permits any peace officer to make an arrest without a warrant for any offense committed within his view, except for moving traffic violations, throughout the State of Texas. While a significant expansion of a peace officer's authority to make arrests, these amendments do not, in our opinion, grant to a peace officer general investigative powers outside his geographical jurisdiction. The bill analysis accompanying House Bill 2614, which enacted subsection (g) of article 14.03, makes clear that the legislature intended only to expand an officer's authority to make arrests outside his jurisdiction:

> Every officer has the jurisdiction to arrest a person anywhere, anytime, for a felony in progress. However, an officer outside of

> his/her jurisdiction cannot currently arrest a person for a misdemeanor in progress. In practice, this limitation has hamstrung police officers in their attempts to thwart criminal activities outside of their jurisdiction.
>
> House Bill 2614 would expand the police power of TCLEOSE certified peace officers to allow any officer to arrest a person for a misdemeanor offense (except traffic violations) anywhere in Texas.

HOUSE COMM. ON PUBLIC SAFETY, BILL ANALYSIS, Tex. H.B. 2614, 74th Leg., R.S. (1995). Moreover, the precise statutory language is couched in even narrower terms: an officer may arrest without a warrant only where an offense is committed "within the officer's presence or view." Thus, we do not believe that the language added to subsection (d) of article 14.03, or the addition of subsection (g), changes the result of Attorney General Opinion DM-77 with regard to a peace officer's authority to *investigate* criminal activity outside his jurisdiction.

We are supported in this conclusion by the law enforcement authority conferred upon a peace officer if the governing body of his jurisdiction opts to invoke chapter 362 of the Local Government Code, discussed above. The mere presence of chapter 362 negates the argument that article 14.03 of the Code of Criminal Procedure expands or confers without requiring the approval of the appropriate governmental body general investigative and law enforcement authority upon any and all peace officers of the State of Texas coterminous with the boundaries of the state. Were we to construe the law as suggested by the Midland County Sheriff, chapter 362 would be redundant and meaningless. We conclude, therefore, that a sheriff may not temporarily provide law enforcement assistance, in the form of manpower and resources, to another Texas sheriff at the request of the other sheriff and under the direction and authority of the requesting sheriff for the protection of life and property in the requesting sheriff's county during times of man-made or natural disaster without the approval of his or her county commissioners court.

You next ask whether a sheriff has "authority to direct his deputies to train with law enforcement personnel from other law enforcement agencies at locations outside of the Sheriff's county." The sheriff is an independent constitutional officer, whose duties are prescribed by the legislature. *See* TEX. CONST. art. V, § 18; Tex. Att'y Gen. Op. No. JC-0214 (2000). "Texas sheriffs have 'virtually unbridled authority in choosing their personnel, restricted only by certain basic constitutional considerations. On the other hand, the commissioners court or members of the court are expressly forbidden to attempt to influence the appointment of any person to an employee position authorized by the court. The commissioners court may limit the number of deputies authorized, but it has no power over naming the individuals to be appointed.' *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 756 (Tex. App.–Tyler 1991, no writ)." Tex. Att'y Gen. Op. No. JC-0214 (2000) at 1. Attorney General Opinion JC-0214 also noted that "the principal power of the commissioners court with regard to other county officers like the sheriff is the power of the purse strings." *Id.* at 2.

In Attorney General Opinion JC-0239, we considered the authority of an elected county official to dismiss his or her employees for all or part of a day. We observed that "an elected county official generally has a 'sphere of authority' within which neither the county commissioners, nor any other county official, may interfere." Tex. Att'y Gen. Op. No. JC-0239 (2000) at 2-3. A county official has "implied authority to set the working conditions for his or her own employees." Although "the commissioners court retains control over the budgetary aspects of the county's employment relationships . . . the county officer retains control over the accomplishment of his or her constitutional and statutory duties through, among other things, the administration of his or her office." *Id.* at 3. While a commissioners court, through the budgetary process, has "a considerable ability to shape the way in which an elected county official uses the resources of his office . . . it cannot make those decisions for him. It may, in effect, tell that official what resources it will place at his disposal. But it may not micro-manage his decisions as to the use of those resources." *Id.*

Applying these principles to the matter of training, we believe it clearly follows that a sheriff may determine what training is appropriate for his deputies, and where, and under what circumstances, that training may take place. The commissioners court may, of course, within its reasonable discretion, determine the sheriff's training budget. But it may not place other restrictions on his authority to provide for his deputies' training, because such details constitute "the administration of his or her office," which is the province of the particular elected official. The commissioners court thus may tell the sheriff what resources it will place at his disposal with regard to training his deputies. But it may not micro-manage his decisions as to the use of those resources.

Finally, you ask whether the STAR program constitutes a violation or conflict with the Emergency Management System established under chapter 418 of the Government Code. Chapter 418, known as the "Texas Disaster Act of 1975," sets up a comprehensive system to, *inter alia*, "prepare for prompt and efficient rescue, care, and treatment of persons victimized or threatened by disaster," whether "natural or man-made catastrophes, riots, or hostile military or paramilitary action," and to "authorize and provide for cooperation in disaster mitigation, preparedness, response, and recovery." TEX. GOV'T CODE ANN. § 418.002 (Vernon 1998).

Since we have already concluded that a sheriff's participation in the STAR program, as described herein, exceeds his authority, it is unnecessary to determine whether, by the Texas Disaster Act of 1975, the legislature has intended to occupy the field in the area of disaster response. Thus, in light of our determination that a sheriff may not, without the approval of his commissioners court, provide general law enforcement services, including investigatory services, to other jurisdictions, we do not address your last question.

## S U M M A R Y

A sheriff may not contract with other sheriffs or municipalities to provide general law enforcement services, including investigatory services, without the approval of the commissioners court of his county. Neither may a sheriff do so in the absence of a contract. A sheriff may, subject to budgetary constraints, determine what training is appropriate for his deputies, and where, and under what circumstances, such training shall take place.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee